M. WALLACE *v.* N. F. SHELTON et al., Levee Commissioners.

The decision in the case of *Yeatman* v. *Crandell*, 11 An. 220, reaffirmed.

An assessment for levee purposes is not a tax within the meaning of Article 123 of the Constitution.

An Act of the Legislature authorising the assessment of an annual tax on alluvial lands, " *specifically* upon each and every acre," for the purpose of building or making and repairing levees, is not in violation of the Constitution.

APPEAL from the District Court of the Parish of Madison, *Farrar, J.* Goodrich & Defrance, for plaintiff and appellant. *Short & Parham*, for defendants.

MERRICK, C. J. The plaintiff who is appellant from a decree against him in the lower court, states his case as follows, viz :

" The plaintiff sued out an injunction against the Collector of the Levee Tax, imposed under the Act of 1857, by the Commissioners of Levees, for the district composed of the parishes of Madison and Carroll. He charges that the said Act, which amends the 2d section of the Act of 1853, and changes the *ad valorem* into that of a specific tax upon lands alone, is—first, *unconstitutional ;* second, that it is *unjust, unequal* and *oppressive ;* and third, that the mode of assessing and collecting said tax is illegal.

" The Act of 1857 reads as follows : Be it enacted, ' That the second section of the above entitled Act (of 1853,) be so amended and reënacted as to read as follows : That for the purpose of building or making and repairing all levees in said levee district, the commissioners of the same are hereby authorized and empowered to asses an annual tax on all the alluvial lands situated in the Parishes of Carroll and Madison, *specifically* upon each and every acre.' See Session Acts, p. 105 ; see also, Session Acts of 1853, p. 44.

" The Article 123 of the Constitution, it is contended, has been violated by the passage of the above Act of 1857. That Article reads : ' Taxation shall be equal and uniform throughout the State. All property on which taxes may be levied in this State, shall be taxed in proportion to its value, to be ascertained by law. No one species of property shall be taxed higher than another species of property of equal value on which taxes shall be levied,' &c.

" The court below sustained the constitutionality of the tax levied under said Act of 1857, upon the authority of the case of *Yeatman* v. *Crandell*, reported in 11th Annual, p. 220. It is respectfully submitted that, that decision, and indeed, others of a recent date, should not be considered as having settled the question; and for the following reasons, plaintiff desires that it may be treated as still an open one :

" He thinks that the well known maxim *stare decisis* should not be invoked upon those decisions. They are not entitled to the weight of authority, until their correctness has been tested by time and experience. 'Even a series of decisions are not always conclusive of what is law'; and again, ' crude and hasty decisions should be revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error.' 1st Kent. 476.

" This is the correct doctrine, and is founded in justice; and the best evidence of its correctness is to be seen in the conflicting decisions that have been had upon this Article of the Constitution since 1854."

It cannot be denied, that the proper construction of Article 123 of the Constitution has occasioned this court much perplexity. The decisions, until recently, at least, have been rendered by a divided bench, and the present doctrine of the court upon the construction of Art. 123 of the Constitution of 1852, was preceded by two decisions the other way. But the questions arising in the *Yeatman* case were decided after a full consideration of the subject. We had not only the aid of the arguments of the learned counsel in that case, but the case of the *Draining Company* was then under advisement on a re-hearing, in which we had the assistance of a number of the most distinguished and experienced counsel of this city. The conclusion arrived at in the case of the *Draining Company*, was after the most mature deliberation. The decree was also concurred in by four Judges. This case was followed by the two cases of *Surgi* v. *Snetchman,* and *Surgi* v. *Batalord*, affirming the same doctrine. 11 An. 387.

After those decisions, which were in conformity with those under the Constitution of 1845, we had hoped the question would be considered as at rest. See *Second Municipality* v. *Duncan*, 2 An. 182 ; *Gillespie* v. *Police Jury of Concordia*, 5 An. 403.

We have not discovered any new argument in the learned brief of the plaintiff, which has not been fully considered in the former cases, and we content ourselves by referring to the reasoning of the court in the cases cited. In addition to what is said in the case of *Yeatman* v. *Crandell*, we refer to the reasoning of the court in the case of the *Draining Company*, on pages 372, 373 and 377, 11 Annual.

The plaintiff attempts to distinguish this case from the case of *Yeatman* v. *Crandell*. He says, the tax there enforced under the Act of 1852, was an *ad valorem* tax upon land, while the tax of 1857 is a specific tax.

In the case of *Layton* v. *The City of New Orleans,* 12 An. 515, we said, that nothing prevented the Legislature from adopting different principles as the basis of its legislation. When the different municipalities were consolidated into one city, the Legislature adopted the principle, that each municipality ought to pay its own debts. Subsequently the Legislature adopted the principle that it was equal and just that the city at large should pay the very unequal debts of the different municipalities. It was not in the power of this court to say, that the legislation was unconstitutional.

So here the Legislature has established at different periods, different principles in regard to the assessments made for the levee district for these parishes, viz:

1st. That it was right, equal and just, to levy an *ad valorem* assessment upon the *lands* alone; that the property receiving the advantage should bear the burden. 2d. That in order to protect the *people* from inundation, it was just and equal that they should pay an *ad valorem* assessment upon all of their taxable property in the levee district. 3d. That it costs (as in the Draining case) as much to protect one acre of land from inundation as it does another; that every acre of land in the District of land subject to overflow, will be benefited to a much greater amount than the assessment; and that, therefore, it is just and equal, that each acre should pay into the hands of the agents charged with protecting it, the same sum as every other acre; and now, by a statute, since this litigation arose, and, 4thly, that the second and third principles ought to be combined, and that *the land* ought to be subject to a specific tax, and all other property to an *ad valorem* tax.

It is easy to perceive, by examination, that none of these theories can attain absolute equality or bring about exact justice among the different individuals composing a community subject to assessment. The first and second theories operated harshly upon those persons who occupied high tracts of land and had already protected themselves by sufficient levees at their own expense, and there may be cases of individual hardship under the third and fourth theories of legislation.

But it is not pretended, but that the plaintiff is benefited to the full amount of his assessment. The money he pays to the agents appointed to protect his property, is restored to him in the increased value of his lands, and their security from overflow. The argument, that he may not wish to sell or cultivate his lands, and that he may prefer that the soil should be raised by the overflow of each year, cannot be admitted. *Salus populi suprema lex.* The obstinacy of a proprietor in one case, or the wishes of a capitalist who holds by speculation in another, cannot be permitted to stand in the way of the safety of a whole community. Courts of justice cannot look to these wishes of parties, but must judge of their liability to assessment and taxation by reference to their property. The argument which would relieve them from the assessment in this case, would relieve them from taxation in every other.

Upon the whole, we cannot say that the principle upon which the Act of 1857 is based is unequal or unjust. The numerous Acts upon the subject show, that the subject has received the careful consideration of the Legislature, and that they have adopted a principle which, with reference to its subject-matter, must, in the absence of conclusive proof to the contrary, be considered just and equal. The presumption is not rebutted by any evidence in this record.

Judgment affirmed.

BUCHANAN, J., and COLE, J., took no part in this decision.